

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | | |
|---|---|---|
| KAYLA MCCLARY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.: 3:24-2619-MGL |
| | § | |
| UNITED PARCEL SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND RESOLVING VARIOUS OTHER MOTIONS AS IDENTIFIED HEREIN**

## I.     INTRODUCTION

Plaintiff Kayla McClary filed this suit against her current employer, United Parcel Service, Inc. (UPS), asserting it discriminated against her on the basis of sex and unlawfully retaliation against her in violation of Title VII of the Civil Rights Act of 1964, along with two state law contract claims.  At the time of filing, McClary was represented by counsel, but he was relieved by motion and McClary has proceeded pro se since.

This matter is before the Court for review of the Report and Recommendation (the Report) of the United States Magistrate Judge suggesting to the Court UPS's motion for summary judgment be granted and McClary's motion "to allow witness testimony" be denied as moot.  The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.  Also before the Court are various motions filed by both parties following the Report.

1

## II.     FACTS AND PROCEDURAL HISTORY

The Report accurately summarized the factual history demonstrated by the record.  The following facts are undisputed.  McClary works for UPS as a part-time loader and unloader at an "Air Hub" facility in South Carolina.  She began working there June 14, 2021, and joined the International Brotherhood of Teamsters, the labor union at UPS.  Her employment is governed by a collective bargaining agreement and supplement (together, the CBA).

Between 2021 and 2023, McClary's supervisors included Mark Sharman and Brooke Kleemhoff.  McClary is a woman, Kleemhoff is a woman, and Sharman is a man.  In that time, McClary made at least twelve calls to UPS's ethics hotline reporting what she described as Kleemhoff's harassment of Sharman by, for example, flirting with him, walking with him from the parking lot, smiling at him, touching his face, and generally engaging in allegedly "inappropriate" behavior, such as wearing tight shorts or using Sharman's credit card at the vending machine.  In Sharman's signed affidavit UPS offered in support of its motion, he denied McClary's reports and clearly stated: "At no time during my course of employment did I observe Brooke Kleemhoff behaving inappropriately or in violation of any UPS policy.  I have never felt sexually harassed by Kleemhoff, nor have I felt that her conduct was unprofessional."  UPS's Motion for Summary Judgment, Exhibit 4 ¶ 8.

While employed by UPS, McClary has been disciplined several times for specific employment-related infractions as described in the Report, which the Court will adopt and incorporates herein.  McClary filed grievances through the union related to these disciplinary actions and several of her disciplinary sanctions were subsequently reduced.

McClary's complaint alleges UPS unlawfully retaliated against her for activity protected by Title VII when it disciplined her subsequent to her reports, subjected her to a hostile work

environment on the basis of sex, breached their contract, and breached their contract accompanied by a fraudulent act.  UPS filed its motion for summary judgment on all of McClary's claims, McClary filed a response, and UPS filed a reply.

The Magistrate Judge filed the Report on January 29, 2026, along with text orders denying various discovery-related motions McClary filed previously.  McClary filed objections to the Report on February 3, 2026, to which UPS filed a response on February 17, 2026.  McClary filed her reply on March 11, 2026.

In addition, following the Report, McClary filed a motion requesting "oral argument and evidentiary hearing regarding her Objections to the Report and Recommendation," ECF No. 155; a motion for leave to file excess pages in support of her objections, ECF No. 156; an "emergency motion" for "leave to file emergency supplemental objections," ECF No. 157; and a "notice of defendant's global procedural default and request to cease harassing paper service," ECF No. 166.  She also filed a response, ECF No. 161, to UPS's motion requesting leave to file excess pages in response to McClary's objections.  In addition to conditionally consenting to UPS's motion, that filing included various additional arguments, "notices," and supplemental authority.  UPS has filed motions to strike ECF Nos. 157, 161, and 166.

## III.   STANDARD OF REVIEW

### A.      *For the Report and Magistrate Judge's Discovery Rulings*

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court

3

may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). This Court need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"In reviewing nondispositive written orders issued by a magistrate judge, a district court 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Wall v. Rasnick*, 42 F.4th 214, 217 (4th Cir. 2022) (quoting Fed. R. Civ. P. 72(a)). Discovery motions are nondispositive.

### B.     For Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party has the burden of proving summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial. *Id.* at 323; *see also* Fed. R. Civ. P. 56. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

4

materials[.]" Rule 56(c)(1)(A). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV.    ANALYSIS AND DISCUSSION

### A.    *UPS's Motion for Summary Judgment*

In an abundance of caution and recognizing the sheer volume of McClary's objections to the Report, the Court will conduct a de novo review of UPS's motion in its entirety. UPS moves for summary judgment on all four of McClary's claims, which the Court will consider in turn.

#### 1.    Retaliation

UPS argues, and the Magistrate Judge concluded, McClary retaliation claim must fail because she has failed to demonstrate an objectively reasonable belief any of her conduct was protected under Title VII and has failed to demonstrate any causal connection between any allegedly protected activity and her disciplinary actions.

Under Title VII, "[t]o establish a prima facie case of retaliation, [the plaintiff] must prove: '(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse

employment activity.'"  *Noonan v. Consol. Shoe Co.*, Inc., 84 F.4th 566, 574 (4th Cir. 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir. 2021)).

Protected activity includes conduct where an employee "oppose[s]" unlawful discrimination.  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (quoting 42 U.S.C. § 2000e-3(a)).  The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct" and found it includes "'voicing one's opinions in order to bring attention to an employer's discriminatory activities.'"  *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)).

Still, oppositional conduct is protected only if the plaintiff "reasonably believed that the employment action she opposed constituted a Title VII violation."  *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018) (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (explaining Title VII "protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful").

McClary disagrees with the Magistrate Judge's recommendation in multiple respects.  Only one is relevant here: she disagrees with the suggestion she unreasonably believed she was opposing conduct unlawful under Title VII.

The record establishes McClary subjectively believed Brooke Kleemhoff was harassing Mark Sharman, and it at least arguably supports a conclusion she believed this harassment was unlawful under Title VII.  Nonetheless, as the Magistrate Judge found, this belief was objectively unreasonable.  As the Magistrate Judge wrote:

6

> None of the incidents Plaintiff reported here [are] prohibited under Title VII—not the alleged dress code violations, not Brooke's improper loading of parcels on the Airbelt, and not Brooke's alleged conduct around Mark, such as waiting in her car to walk with him from the parking lot and smiling at him. And, based on the facts and record presented here, Plaintiff cannot have reasonably believed that any of them were. Most importantly, nothing reasonably permits an inference that any conduct of Brooke toward Mark was unwelcome.

Report at 9. The Court agrees with and adopts this analysis. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting Title VII is not "a general civility code for the American workplace"). Therefore, the Court will overrule this objection.

McClary's only other clear objection to the Magistrate Judge's analysis of her retaliation claim is her insistence the Magistrate Judge ought to have considered Bernard Bowman's text messages she included in an earlier filing. Those text messages are unavailing. Even if the Court were to accept this purported evidence, the analysis would be unchanged because Bowman's alleged text messages merely corroborate McClary's reports about the alleged activity between Kleemhoff and Sharman. Although they support McClary's subjective belief Kleemhoff was harassing Sharman, they are entirely uninfluential in the objective reasonability analysis.

Because McClary failed to produce evidence establishing a prima facie case of retaliation, it is unnecessary to consider the causation element, UPS's proffered legitimate business reasons for her discipline, or any of McClary's arguments UPS's reasons are pretextual. As such, the Court will overrule this objection, too; and UPS's motion for summary judgment will be granted as to this cause of action.

### 2. Hostile Work Environment

UPS argues, as the Magistrate Judge stated, McClary's hostile work environment fails because she has failed to present any evidence of conduct sufficiently severe as to materially alter the terms and conditions of the work environment.

"Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer 'to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'" *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (quoting 42 U.S.C. § 2000e–2(a)(1)).  A plaintiff states a hostile work environment claim when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

As stated by the Magistrate Judge, McClary testified at her deposition she never experienced any sexual harassment at work.  Report at 14; UPS's Motion for Summary Judgment, Exhibit 2 at 57-58.  McClary has failed to present any evidence she experienced treatment at work that could even arguably be described as sexual harassment.  Rather, the purported harassment she allegedly experienced is unprotected by Title VII.  For example, she argues:

> Plaintiff's complaint was not merely about a consensual relationship between Brooke and Mark, but about unwelcome and harassing behavior directed at Mark and the impact it had on Plaintiff's work environment.  This conduct constitutes unlawful harassment under Title VII, as it created a hostile work environment and affected Plaintiff's terms and conditions of employment.

Objections at 10.  McClary fails specify how the challenged conduct affected her or to offer evidence demonstrating how the alleged conduct impacted her in any way.

The Court is unable to identify any objectionable conduct directed at McClary, nor is it evident how the alleged interactions she witnessed between Sharman and Kleemhoff could possibly be considered sufficiently severe for McClary to state a hostile work environment claim under Title VII.   On the record before the Court, a reasonable jury would be unable to find she

suffered a workplace environment "permeated with discriminatory intimidation, ridicule, and insult" on the basis of sex. Thus, the Court will also overrule this objections, the Report will be adopted in this respect, and UPS's motions will be granted as to this claim.

### 3.     State Law Claims

McClary's remaining two claims are for breach of conduct and breach of conduct accompanied by a fraudulent act, which can be considered together. The Magistrate Judge recommends the Court grant UPS's motion because these claims are preempted under federal law governing collective bargaining agreements.

McClary summarily argues the Magistrate Judge erred because "not all of her claims are preempted" by federal law. 14. She fails, however, to identify a single alleged breach of contract based on anything other than the CBA, nor does any independent claim appear to the Court.

Thus, the Court holds the Magistrate Judge correctly determined these claims are preempted by federal law. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (explaining Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "governs claims founded directly on rights created by collective-bargaining agreements" and therefore preempts any claims arising under state law for breach of a collective-bargaining agreement). The Court will therefore overrule this objection as well.

As to these claims, the Report will be adopted and incorporated herein. UPS's motion for summary judgment will be granted as to these claims for the reasons given in the Report.

### B.     *Remaining Motions and Filings*

### 1.     McClary's Appeal from the Magistrate Judge's Other Decisions

Most of McClary's remaining objections relate to discovery issues. As McClary is a pro se litigant, the Court will consider these objections as an appeal from the Magistrate Judge's denial

9

of her motions, even though they were not filed as such. *See Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022) ("[W]hen confronted with the objection of a pro se litigant, we must also be mindful of our responsibility to construe pro se filings liberally."). She argues, for example, the Magistrate Judge erred by denying her admittedly untimely motion to compel. Objections at 18, 20, 29.

The Court concludes all of these arguments are unworthy of discussion and without merit; the decisions are neither "clearly erroneous" nor "contrary to law." Fed. R. Civ. P. Rule 72(a). Thus, the Court will affirm the Magistrate Judge's discovery rulings.

### 2.     McClary's Motion to "allow witness testimony."

McClary objects to the Magistrate Judge's suggestion the Court terminate her motion for witness testimony as moot. She writes:

> The text messages from Bernard Bowman[,] Kayla Asbury[,] and Carols McFadden, already in the court record, show he has first-hand knowledge of the retaliatory environment. Dismissing his testimony without a hearing is a violation of Plaintiff's right to present a defense. Plaintiff stands ready to have Bernard Bowman, Kayla Asbury and Carols McFadden testify in person or by phone to authenticate these text messages and confirm their accuracy under oath.

Objections at 19.

McClary misunderstands the nature of a motion for summary judgment. "Standing ready" to have these people testify is insufficient; she was obligated to produce legitimate evidence in support of her case by way of affidavit, deposition testimony, or other admissible evidence. Unverified screenshots of unidentified messages are also insufficient. Further discussion is unwarranted, and her motion to allow witness testimony (ECF No. 114) will be deemed moot.

To the extent McClary intended to request an evidentiary hearing before the Court, rather than permission to present witnesses at a trial, the motion is denied as a hearing is unnecessary to resolve the matter before the Court.

### 3.    Post-Report Motions and Filings

McClary's additional motions following the Report are all similarly unnecessary to resolve or meritless.  Her request for oral argument and an evidentiary hearing will be rendered as moot, as the Record is sufficiently developed for the Court to resolve the matter on the Record now before it.  Her motions for leave to file excess pages and supplemental authority will also be rendered as moot.  Moreover, even if the Court were to consider her proffered supplemental filings, the Court's analysis and disposition of UPS's motion for summary judgment would be unchanged. Finally, her motion relating to "Defendant's Global Procedural Default and Request to Cease Harassing Paper Service" will be denied as meritless and because it appears to be rendered moot by the Court's disposition of the motion for summary judgment.

Given the Court's disposition of UPS's motion for summary judgment, its remaining motions to strike McClary's various filings will also be rendered as moot.

## V.    CONCLUSION

For the reasons explained above, and after a thorough review of the record in this case, McClary's objections to the Report are overruled and UPS's motion for summary judgment is **GRANTED**.  Any objections McClary raised which are not specifically addressed above are overruled as they are patently meritless and unworthy of discussion.  The Report is adopted and incorporated herein.

McClary's and UPS's remaining motions are **DENIED** or **RENDERED AS MOOT**  as provided and for the reasons given above.

11

**IT IS SO ORDERED.**

Signed this 26 day of March, 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

*****

**NOTICE OF RIGHT TO APPEAL**

Reynolds-Hall is hereby notified of his right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

12